IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN M. YOUNG,

                                     OPINION AND ORDER

               Plaintiff,

                                 20-cv-359-bbc

      v.

MAKDA FESSAHAYE, DOUGLAS G. PERCY,
L. WEBER, GARY BOUGHTON, JAEGER,
E. RAY, M. LARSON, MARK KARTMAN,
LARRY BROWN, LACEY L. DICKMAN, BRINKMAN,
COLLINS, HULCE, SCULLION, THOMAS TAYLOR,
BEN TIERNEY, BLOYER, SHAUN FUNK, WARD JR.,
CHAD WINGER, KEITH WIEGEL, SHAWN GALLINGER,
FEDIE JR., KIMBERLY FINNELL, MARLESHA FISHNICK,
DR. A. SIMCOX, DR. HEATHER SCHWENN,
DR. STACEY HOEM, ANGELA MINK, DR. A. IBIROGBA,
DR. RIBAULT, JAMIE ADAMS, SHERYL KINYON,
PEGGY KINNEY, MICHAEL KEMERLING and JULIA PINZ,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Sean M. Young, who is incarcerated at Wisconsin Secure Program Facility, has filed a civil action under 42 U.S.C. § 1983, alleging that prison staff violated his rights under the Eighth Amendment and the equal protection clause in a variety of ways related to two incidents of self harm and a strip search.  His complaint is before the court for screening under 28 U.S.C. § 1915A, to determine whether any portion of his complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

After reviewing the amended complaint, I conclude that plaintiff cannot proceed on

any claim at this time because the number of claims and defendants in his amended complaint violates Rule 20 of the Federal Rules of Civil Procedure and makes the case unmanageable. Therefore, I will give plaintiff an opportunity to choose which claims he wishes to pursue in this case, which claims he wants to pursue in a different case and which claims he wishes to dismiss without prejudice to his refiling them at a later date. After plaintiff files a response, I will determine whether he may proceed with any of his claims.

Plaintiff alleges the following facts in his complaint.

## ALLEGATIONS OF FACT

### A. First Incident of Self-Harm

Plaintiff Sean Young was incarcerated at Wisconsin Secure Program Facility at all times relevant to this lawsuit. On December 3, 2019, he became distressed after learning from his daughter that a childhood friend had died of cancer and he asked to speak with a supervisor. Defendant Brinkman (a captain) told plaintiff that he would contact a social worker and manager about allowing plaintiff to make a phone call the next day.

On December 4, 2019, plaintiff told defendant Ben Tierney (a sergeant) that he was in a bad state of mind and wanted to speak with defendant Dr. Stacey Hoem in the psychological services unit. Tierney stated that he would see what he could do. Shortly after that, defendants Scullion (a lieutenant) and Lacey Dickman (a social worker) spoke with plaintiff, who told them that he wanted to make an emergency telephone call to his friend's wife. Dickman told plaintiff that she and defendant Larry Brown (plaintiff's unit supervisor)

2

had listened to plaintiff's phone call with his daughter and were not going to authorize an emergency phone call.  Dickman also stated that neither she nor Brown would contact Dr. Hoem over such a trivial matter.

After defendants Dickman and Scullion left, plaintiff began banging his head on his cell door.  Defendants Scullion, Fedie, Shaun Funk, Shawn Gallinger and Keith Wiegel (all correctional officers) then removed plaintiff from his cell voluntarily and escorted him to the health services unit where he saw defendant Sheryl Kinyon (assistant manager of the health services unit) for a large abrasion and bump on his forehead.  Although plaintiff said he had a bad headache and wanted to be taken to the hospital for imaging studies, Kinyon stated that she did not believe that was necessary.  Defendant Dr. Ribault agreed over the telephone with Kinyon's assessment.  Kinyon did not give plaintiff anything for his head injury or headache.

## B.  Strip Search

On December 4, 2019, plaintiff was taken from the health services unit to the strip cage where he was tethered to a door and told to kneel down.  Defendant Wiegel cut plaintiff's clothing off him while defendants Fedie and Gallinger held him down and pressed his face into the floor.  Wiegel fondled plaintiff's genital area and spread open his buttocks and looked between them.  Wiegel made a comment about the new scissors being sharp as they grazed plaintiff's right buttocks.  Plaintiff viewed the incident as a sexual assault. Defendants Scullion, Funk, Tierney, Brown, Finnell and Fishnick all saw what happened and

did not intervene.  Plaintiff was then walked naked except for a small towel wrapped around him to an observation status cell.

Throughout the remainder of the day, plaintiff told correctional staff defendants Bloyer, Winger, Taylor, Collins and Brinkman about the assault and asked to call the Prison Rape Elimination Act (PREA) hotline.  Defendants told plaintiff that he could not call the hotline while he was on observation status but that they would email the warden, security director and unit supervisor about the incident.  At 8:00 a.m. on December 5, 2019, plaintiff told defendant Dr. Schwenn about the sexual assault and stated that he wanted to report the incident.  Schwenn responded that she was not interested and said "good luck" trying to file a PREA complaint while on observation status.

Plaintiff was removed from observation status at 9:00 a.m. on December 5, 2019. Defendant Collins made sure that plaintiff was able to call the hotline on both December 5 and 10, 2019.

On January 5, 2020, plaintiff submitted a psychological services request to Dr. A. Simcox (psychological services supervisor), explaining that he had experienced a traumatic experience.  Dr. Simcox responded on January 7, stating that his own employment at the institution was ending and that he should contact Dr. Hoem.  As of February 21, 2020, Simcox was still working at the institution.

As of the date plaintiff filed his complaint in this case, no one had interviewed him about the alleged sexual assault.  Plaintiff has written defendants Gary Boughton (warden), Jaeger (deputy warden), Mark Kartman (security director), Makda Fessahaye (administrator

of Department of Adult Institutions) and L. Weber (PREA director) about the incident.  On January 28, 2020, defendant Douglas Percy (assistant administrator of the Division of Adult Institutions) responded on Fessahaye's behalf.  Although plaintiff does not allege what Percy said, he believes that Percy and Fessahaye are attempting to do "everything within their power" not to address what happened to him.

## C.  Second Incident of Self Harm

Soon after plaintiff was placed in observation status on December 4, 2019, he began banging his head on the cell door.  Defendants Dr. Hoem and Angela Mink (an assistant psychology services clinician) came to plaintiff's cell, asked him why he was banging his head and stated "We don't care. You can keep banging [your head] until it comes off" when plaintiff refused to respond.  Although plaintiff "practically begged" (plaintiff does not identify exactly what he said) for Hoem and Mink to place him in restraints, they walked away without doing anything.  Defendants Brown, Scullion, Funk and other unnamed correctional officers also ignored plaintiff.  (Plaintiff does not say what these officers knew and does not explain how they failed to help him.)

Plaintiff ended up passing out naked on the floor of his cell, where he remained for two and a half hours.  When he regained consciousness, he was disoriented and could not stand.  Plaintiff called the sergeant's station and told defendant Bloyer that he needed to go to the health services unit immediately.  About 15 minutes later, Bloyer responded that she had contacted the health services unit but they would not see him again that day.  Although

5

plaintiff told Bloyer that his head was in extreme pain and he felt like as if he would faint when he stood up, she said that there was nothing that she could do.  She stopped answering when he called the sergeant's station.  Throughout the remainder of the day, plaintiff spoke to correctional staff defendants Bloyer, Winger, Taylor, Collins and Brinkman about his head.  All of them acknowledged that he was seriously injured and stated that they would have the health services unit see him as soon as possible.

After plaintiff was removed from observation status at 9:00 a.m. on December 5, 2019, he was taken to the health services unit because he was on a food and liquid strike. Plaintiff saw defendants Dr. Ibirogba and Jaimie Adams (health services manager) and told them about banging his head and being sexually assaulted.  He stated that his whole head was in pain and asked to get a CT scan at the hospital.  Ibirogba and Adams seemed to downplay the severity of plaintiff's head injury and sent him back to his cell after explaining what would happen if he continued his food and liquid strike.

At approximately 3:30 p.m. on December 5, plaintiff passed out in his cell.  He was taken by wheelchair to the health services unit where he was seen by a nurse who is not a defendant.  Defendant Taylor took pictures of plaintiff at the nurse's request.  Plaintiff was placed in a nearby cell where he could be monitored on camera.  Defendant Julia Pintz (a nurse) brought him Tylenol and a cold compress for his headache.  When plaintiff disagreed with this limited treatment, Pintz said she was giving him what she was told to bring him. Pintz walked away even though she could see that plaintiff had severe facial and head injuries.

6

On December 8, 2019, plaintiff requested a wheelchair to go to the health services unit. Defendant Michael Kemerling (a nurse) refused to see plaintiff because a correctional officer had told Kemerling that plaintiff was walking around in his cell and did not need a wheelchair.

At 4:00 a.m. on December 9, 2019, plaintiff woke with a severe headache and crawled across his cell to the emergency call button. While he was speaking with defendant Tierney, he passed out. Another inmate saw plaintiff lying on the floor for about two hours. Although that inmate told Tierney that plaintiff was unconscious, Tierney did nothing and did not check on plaintiff. Defendants Hulce (correctional officer) and Peggy Kinney (a nurse) also came to plaintiff's cell while he was unconscious but they walked away without doing anything. Plaintiff still has a constant headache, experiences episodes of dizziness if he stands too long, has trouble remembering things, has blurry vision in his left eye and stutters when he talks.

OPINION

A.  Rule 20 of the Federal Rules of Civil Procedure

Plaintiff has named 36 defendants whom he alleges violated his constitutional rights in various ways during three distinct incidents that occurred over a period of a few days. Under Rule 20 of the Federal Rules of Civil Procedure, a lawsuit may be severed when it includes unrelated claims against different defendants. Lee v. Cook Cty., Illinois, 635 F.3d 969, 971 (7th Cir. 2011); In re High Fructose Corn Syrup Antitrust Litigation, 361 F.3d

439, 441 (7th Cir. 2004); <u>Aiello v. Kingston</u>, 947 F.2d 834, 835 (7th Cir. 1991).  Even when the claims are related, the court has authority under Rule 21 and its inherent authority to sever a lawsuit when it would be unwieldy to allow a plaintiff to maintain so many claims against so many different defendants in a single case.  <u>Lee</u>, 635 F.3d at 971; <u>In re High Fructose Corn Syrup Antitrust Litigation</u>, 361 F.3d at 441.  As the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."  <u>Wheeler v. Wexford Health Sources, Inc.</u>, 689 F.3d 680, 683 (7th Cir. 2012).  When a plaintiff tries to fit too many claims into one case, the court may require the plaintiff "to file separate complaints, each confined to one group of injuries and defendants."  <u>Id.</u> at 683.

Many of plaintiff's allegations relate to the alleged failures of prison staff to protect him from committing self harm and insure that he received adequate treatment for his resulting injuries.  These claims involve two separate incidents of self harm that are factually distinct and involve different sets of defendants.  In addition, his claims that prison staff conducted an unconstitutional strip search, failed to intervene to stop the search and failed to investigate or respond appropriately to the incident are factually and legally distinct from his claims about his self harm.

Even if I assume that some or all of plaintiff's claims could be joined under Rule 20, I conclude that they should be severed under Rule 21 and the court's inherent authority. <u>UWM Student Association v. Lovell</u>, 888 F.3d 854, 863 (7th Cir. 2018) ("[The federal] rules are broad, giving district courts considerable flexibility in managing and structuring civil

litigation for fair and efficient resolution of complex disputes.").  There are simply too many claims against too many defendants in this case to allow the court to decide them efficiently in one case.

I conclude that the claims in plaintiff's complaint belong in three separate lawsuits that track the three categories of claims described below:

**Lawsuit #1:**  Plaintiff's claims that defendants Dickman, Brown and Scullion failed to contact psychological services or protect plaintiff from his first attempt to harm himself in his cell on December 4, 2019 and that defendants Kinyon and Ribault failed to provide him appropriate treatment for his resulting head injury and headache.

**Lawsuit #2:**  Plaintiff's claims that defendant Wiegel sexually harassed him during a strip search on December 4, 2019; defendants Scullion, Funk, Tierney, Fedie, Finnell, Fishnick and Gallinger failed to intervene to stop the assault; defendants Fessahaye, Douglas Percy, Weber, Boughton, Jaeger, E. Ray, M. Larson and Kartman failed to investigate the incident and insure that he would not be assaulted in the future; defendant Dr. Schwenn failed to report the sexual assault of plaintiff; and defendant Dr. Simcox failed to provide plaintiff ith psychological services related to the sexual assault when plaintiff submitted a request in January 2020.

**Lawsuit #3:**  Plaintiff's claims that defendants Hoem and Mink, and possibly defendants Brown, Scullion and Funk, failed to protect plaintiff from self harm while he was on observation status on December 4, 2019; defendants Adams, Ibirogba, Pintz, Kemmerling and Kinney failed to provide adequate medical treatment for plaintiff's resulting injuries;

9

defendants Bloyer, Tierney, Taylor, Hulce, Ward, Winger, Collins and Brinkman failed to insure that plaintiff received medical treatment for his injuries; and defendants Ray and Larson failed to conduct an adequate investigation plaintiff's inmate complaints about the incident.

Although plaintiff may believe that all of his claims are related, I conclude that there are no significant questions of law or fact common to all of the claims or all of the defendants that would satisfy Rule 20.  Rather, the claims in each of these possible lawsuits involve distinct incidents that occurred at different times and involved different sets of defendants.

B.  Next Steps

Under George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), I may apply the initial payment that plaintiff has made to only one of the three lawsuits I have identified above. Plaintiff will have to choose which of the lawsuit he wishes to pursue at this time.  That lawsuit will be the only lawsuit assigned to this case number.

As for the other two potential lawsuits, plaintiff has to make a choice.  One option is to pursue the other lawsuits separately.  If he makes that choice, he will be required to pay a separate filing fee for each lawsuit.  In addition, he may receive a "strike" under 28 U.S.C. § 1915(g) for any lawsuit that is dismissed for failure to state a claim upon which relief may be granted or for one of the other reasons listed in § 1915(g).  As plaintiff may be aware, once a prisoner receives three strikes, he is not able to proceed in any new cases without first paying the full filing fee, except in narrow circumstances.  28 U.S.C. § 1915(g).

Alternatively, plaintiff may choose to dismiss one or more of the other lawsuits

10

voluntarily.  If he chooses this route, he will not owe additional filing fees or face a strike for any lawsuit he dismisses.  Any lawsuit dismissed voluntarily would be dismissed without prejudice, which means that plaintiff would be able to bring it at another time, so long as he files it before the statute of limitations has run.  (In Wisconsin, the statute of limitations for a claim brought under 42 U.S.C. § 1983 is six years.  Reget v. City of La Crosse, 595 F.3d 691, 694 (7th Cir. 2010).)

Because it is not clear at this time which of plaintiff's separate lawsuits he will pursue, I have not assessed the merits of the claims raised in any of the lawsuits identified above or determined whether they provide fair notice of his claims, as required by Rule 8 of the Federal Rules of Civil Procedure.  Once plaintiff identifies the suit or suits he wants to continue to litigate, I will screen the complaint as required under 28 U.S.C. § 1915A. Because plaintiff faces filing fees and potential strikes for each lawsuit he pursues, he should consider carefully the merits and relative importance of each of his potential lawsuits when choosing which of them he wishes to pursue.

If plaintiff disagrees with the way I have grouped his claims or if he believes I have left out claims he intended to assert or included claims he did not intend to assert, he may raise those objections, but he must still comply with this order and choose which of the three lawsuits he wishes to pursue.  If he fails to do so, I will dismiss all of his claims for his failure to comply with a court order.

ORDER

11

IT IS ORDERED that

1.  Plaintiff Sean Young may have until June 22, 2020, to identify for the court whether he wishes to proceed with lawsuit (1), (2) OR (3) under the case number assigned to this case.  Plaintiff must pick one and only one of these lawsuits to go forward under case no. 20-cv-359-bbc.

2.  Also by June 22, plaintiff is to tell the court which other lawsuits he wishes to pursue under separate case numbers, if any, and which lawsuits he will dismiss voluntarily, if any.

3.  For any lawsuit that plaintiff dismisses voluntarily, he will not owe a filing fee and he will be permitted to refile the dismissed claims at a later date, so long as he complies with the statute of limitations.

4.  For each lawsuit plaintiff chooses to pursue, he will owe a separate filing fee.

5.  Once plaintiff chooses which lawsuits he wants to pursue, I will screen the claims to determine whether they state a claim upon which relief may be granted.  If plaintiff fails to respond to this order by June 22, I will enter an order dismissing his claims without prejudice for his failure to prosecute them.

Entered this 1st day of June, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge