IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN M. YOUNG,

                                                                                           OPINION AND ORDER

                                  Plaintiff,

                                                                                           20-cv-359-bbc

     v.

MATTHEW SCULLION, BEN TIERNEY, SHAUN FUNK,
KEITH WIEGEL, SHAWN GALLINGER, JOSHUA FEDIE,
KIMBERLY FINNELL, MARLESHA FISHNICK AND
LEBBEUS BROWN,

                                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Sean M. Young is proceeding on Eighth Amendment claims that defendant Keith Wiegel sexually assaulted him on December 4, 2019, during a strip search performed on plaintiff while he was incarcerated at Wisconsin Secure Program Facility. He claims also that defendants Matthew Scullion, Shaun Funk, Ben Tierney, Joshua Fedie, Kimberly Finnell, Marlesha Fishnick, Shawn Gallinger and Lebbeus Brown failed to intervene to stop the assault. Now before the court are the parties' motions for summary judgment. Dkt. ## 24, 35. Because plaintiff's allegations are refuted by video recordings of the incident, I will deny plaintiff's motion and grant summary judgment in defendants' favor.

      Before turning to the facts, I note that plaintiff did not file a brief in opposition to defendants' motion for summary judgment, and did not cite specific evidence when disputing defendants' proposed findings of fact. However, plaintiff submitted evidence in support of his own motion for summary judgment, including his sworn complaint, which

1

includes allegations that: defendant Wiegel "tore" plaintiff's pants off; defendants Fedie and Gallinger "piledrived" him into the floor; Wiegel "fondled" his genitals; and defendant Scullion "commanded" Wiegel to sexually assault plaintiff. In further support of his motion, plaintiff asked defendants' counsel to submit the video recordings on his behalf. Dkt. # 28. Why he did so is a mystery, because the video recordings show that plaintiff's claim of being physically and sexually abused by some of the defendants while others looked on is patently frivolous. Accordingly, I have described what the videos show without favoring plaintiff's version of the facts. Scott v. Harris, 550 U.S. 372, 378–81 (2007) ("The Court of Appeals . . . should have viewed the facts in the light depicted by the videotape."); Lopez v. Sheriff of Cook Cty., 993 F.3d 981, 984 (7th Cir. 2021) (court may "take stock of what the video evidence shows without favoring [plaintiff] where the video contradicts his view of the facts"); Horton v. Pobjecky, 883 F.3d 941, 944 (7th Cir. 2018) ("When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly contradicted by the footage."). I am also inclined to grant defendants' request that I impose a strike under 28 U.S.C. § 1915(g), but I will wait for plaintiff's response to that motion before deciding. See Defs.' Mot. for Sanctions, dkt. #44 (response due 10/4/21).

From the defendants' proposed findings of fact and the video footage from a handheld camera and body cameras worn by some of the defendants, I find the following facts to be undisputed unless otherwise noted.

FACTS

Plaintiff Sean Young was incarcerated at the Wisconsin Secure Program Facility at all times relevant to this lawsuit. All defendants worked at WSPF during the relevant time: Matthew Scullion was a lieutenant; Ben Tierney was a sergeant; Lebbeus Brown was a unit manager; and Keith Wiegel, Shaun Funk, Joshua Fedie, Kimberly Finnell, Marlesha Fishnick and Shawn Gallinger were correctional officers.

At the time of the incident at issue, plaintiff was housed in WSPF's Alpha Unit, which is located within the institution's Restrictive Status Housing Unit. The Restrictive Status Housing Unit houses inmates on administrative confinement, controlled segregation, disciplinary separation, observation status, protective confinement and temporary lockup status. On December 4, 2019, medical and psychological staff at WSPF determined that plaintiff should be moved to a clinical observation cell after he was seen banging his head on the wall of his cell and threatening self-harm. Clinical observation status is a very restrictive, non-punitive status used to prevent an inmate from inflicting harm upon himself or someone else.

Whenever an inmate is transferred to clinical observation, he must undergo a strip search before he is placed in the cell. Strip searches are necessary both for the safety of the inmate and the security of the institution. There are two types of strip searches: visual and staff-assisted. In a visual search, the inmate is taken to a small cell called a strip cell. Once in the strip cell, his restraints are removed and he removes his own clothing and manipulates his own body parts. In a staff-assisted search, a staff member uses a knife or scissors to

remove the inmate's clothing, then checks the inmate's mouth, hair, ears, fingers, armpits, feet and toes. The staff member also uses bladed hands (fingers together in a straight line using the back of the hand) to check underneath the inmate's penis and scrotum and between his buttocks. Correctional staff will give the inmate the opportunity to comply voluntarily with a visual strip search before conducting a staff-assisted search, but not if the inmate has already been non-compliant that day.

On December 4, 2019, defendants Scullion, Wiegel, Gallinger and Fedie were called to escort plaintiff from his cell to the Health Services Unit and then to a strip cell. While escorting plaintiff, Officer Gallinger was holding plaintiff's left arm, Officer Fedie was holding his right arm, and Lieutenant Matthew Scullion and Officer Wiegel were following behind. Gallinger, Fedie and Wiegel wore body cameras, which recorded the incident.

As they approached the open door to the strip cell, defendant Gallinger asked plaintiff if he would voluntarily comply with a strip search. Plaintiff replied: "No, I'm not. I'm not going to comply with a strip search." When Gallinger advised him that this meant the officers would have to cut his clothes off, plaintiff replied: "I understand the process." Accordingly, Scullion ordered Wiegel to perform a staff-assisted strip search. Officer Shaun Funk was nearby and recorded the search with a handheld video camera.

The escorting officers stopped at the entrance to the strip cell and asked plaintiff to kneel, which he did without complaint. As Wiegel began to remove his pants, plaintiff expressed surprise, asking, "You're taking my clothes now?" Wiegel told plaintiff that it would be easier if he would comply, suggesting that plaintiff still could opt for a visual strip

4

search, but plaintiff shook his head and responded, "No, no, you're all doin' it like this . . . go ahead and do it whatever way y'all going to do it." Wiegel then started to remove plaintiff's pants and underwear, directing plaintiff to lift one knee and then the other so he could pull these items down over plaintiff's knees without cutting them. Plaintiff complied with these requests and cannot be heard on the videos to say anything more during the search.

After Wiegel lowered plaintiff's pants, Gallinger and Fedie lowered plaintiff slowly from a kneeling to a lying position on the floor. Plaintiff's face or head did not hit the floor during this process. Wiegel then removed plaintiff's pants and underwear completely. (An officer who is not named as a defendant assisted in removing and then replacing plaintiff's leg shackles.) Then, with plaintiff lying prone on the ground, Wiegel used a safety shears to cut off plaintiff's shirt. As he was making his last cuts, he remarked to Lieutenant Scullion that the shears were "a lot better scissors than we used to have. That thing cut easy." Although it is impossible to tell from the video footage precisely where the shears were relative to plaintiff's body, it appears they were near the small of plaintiff's back, not his buttocks. In any event, Wiegel does not recall "grazing" Young's buttocks with the shears, and plaintiff did not yelp in pain or otherwise verbalize that he had been nicked with the shears. Gallinger and Fedie were each on their knees, one on each side of plaintiff, and neither made any facial expressions or took any actions suggesting that anything unusual had occurred while Wiegel cut off plaintiff's shirt.

After plaintiff's shirt was removed, Officers Gallinger and Fedie assisted plaintiff back

5

to his knees, each officer holding one of plaintiff's arms above the elbow. In raising plaintiff to his knees, the officers did so in a fluid, controlled motion without any "jerking" or "yanking" on plaintiff's arms. Wiegel then searched plaintiff, who was now naked. While verbalizing the areas he was checking, Wiegel lifted each of plaintiff's feet and checked between his toes, then checked his armpits, hair, mouth, fingers, and ears. Facing plaintiff, he then used the back of his bladed hand to gently lift plaintiff's scrotum and penis to check for contraband underneath. This contact lasted no more than one second. Moving around to the back of plaintiff, Wiegel used the backs of his bladed hands to spread plaintiff's buttocks apart and visually look for contraband; again, this contact lasted no more than a second. Gallinger and Fedie assisted Young to a standing position, placed a towel around his waist, and then escorted him to his observation cell.

Defendant Scullion stood nearby throughout the search, observing and giving directions as necessary. Defendant Sergeant Ben Tierney was in the sergeant's station at the time of the search and would not have had a direct visual of the search. Defendant Marlesha Fishnick did not participate in the search. Officer Kimberly Finnell's only involvement was to bring the towel to wrap plaintiff's waist as directed by Lieutenant Scullion. Defendant Lebbeus Brown passed by in the hallway while plaintiff was lying prone, but he did not stop and was not involved in the strip search.

OPINION

A prisoner may prevail on an Eighth Amendment claim if he can demonstrate that

a search was performed with the intention of harassing or humiliating him. King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015) (noting that strip searches can violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification, such as a need for order and security); Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) (holding that a strip search will violate the Eighth Amendment only if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain"). Plaintiff does not deny that defendants had a legitimate security purpose in searching him, but argues that the officers conducted the search in a harassing manner intended to humiliate him.

As should be plain from the facts set out above, plaintiff's claim that he was harassed and sexually abused during the strip search is patently frivolous. No one "tore" his clothes off, "piledrived" him into the floor, or "fondled" his genitals. To the contrary, the officers involved were calm and professional throughout the encounter, and made no sudden or violent movements. Plaintiff was calm as well, except for his brief expression of surprise when defendant Wiegel started lowering plaintiff's pants. Wiegel's contact with plaintiff's genitals and buttocks was minimal and lasted no more than was necessary to check for contraband. Finally, contrary to plaintiff's allegation, the search was not conducted in the presence of two female officers. The only female officer involved was defendant Finnell, who arrived with a towel to wrap around plaintiff's waist after the search was completed. There is no evidence, video or otherwise, that she was close enough to witness the search as it was conducted.

Having no evidence to support his allegations, plaintiff argues that a jury could find that defendants "humiliated" him by conducting a staff-assisted search instead of a visual strip search. However, plaintiff concedes that he told Gallinger he would not comply with a visual strip search. Plaintiff has not adduced any evidence to refute Wiegel's declaration that an inmate who has already been "non-compliant" need not be given another opportunity for a visual strip search. Thus, even if the officers *could* have allowed plaintiff a second opportunity for a visual strip search, their failure to do so does not support an inference that the officers intended to humiliate him.

The only other "evidence" that plaintiff identifies to support his claim of harassment is Wiegel's remark about the scissors. Having listening to the tape and hearing the remark and seeing the context in which it was made, I find that no reasonable juror could understand Wiegel to have been making a "lewd" comment intended to humiliate plaintiff rather than simply observing that the new scissors were sharper than the last pair he had used. Finally, because none of the escorting officers abused or otherwise intentionally humiliated plaintiff during the search, defendants Tierney, Finnell, Fishnick, Funk, and Brown would not be liable for failing to intervene, even if any of them had been in a position to do so.

In sum, because plaintiff has failed to identify a genuine issue of material fact regarding the strip search, I conclude that defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that

1. Plaintiff Sean Young's motion for summary judgment, dkt. #24 is DENIED; and

2. The motion of defendants Keith Wiegel, Matthew Scullion, Shaun Funk, Ben Tierney, Joshua Fedie, Kimberly Finnell, Marlesha Fishnick, Shawn Gallinger and Lebbeus Brown for summary judgment, dkt. # 35 is GRANTED; and

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 30th day of September, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge